UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

HASHMATULLAH WAZIRY,

Plaintiff,

Case # 23-CV-6395-FPG

v.

DECISION AND ORDER

SHIRBAHADAR FNU,

Defendant.

## INTRODUCTION

Plaintiff Hashmatullah Waziry filed a Second Amended Complaint with claims for breach of contract, unjust enrichment, and an accounting against a former business associate, Defendant Shirbahadar Fnu. ECF No. 48. Now before the Court is Defendant's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. ECF No. 55. Plaintiff opposes the motion. ECF No. 57. For the following reasons, Defendant's motion is GRANTED IN PART and DENIED IN PART.

## LEGAL STANDARD

Summary judgment is appropriate when the record shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Disputes concerning material facts are genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). However, the non-moving party "may not rely on conclusory allegations or unsubstantiated

speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quotation marks omitted).

**BACKGROUND**

The following are undisputed facts, unless otherwise noted. Plaintiff and Defendant are both Afghan immigrants who worked as interpreters for the United States Military in Afghanistan and became acquainted in approximately 2012. ECF No. 55-3, ¶ 3; ECF No. 57-2, ¶ 1. Defendant operates a trucking company called Galaxy Cargo Inc., which is headquartered in Durham, North Carolina. ECF No. 55-3, ¶ 4; ECF No. 57-2, ¶ 1. Galaxy Cargo Inc. is a North Carolina limited liability company formed on June 25, 2018, with Defendant as its sole member and organizer. ECF No. 55-3, ¶ 5; ECF No. 57-2, ¶ 1.

In early 2022, Plaintiff and Defendant discussed an arrangement whereby Plaintiff would operate a commercial truck. ECF No. 55-3, ¶ 13; ECF No. 57-2, ¶ 3. Plaintiff attempted to obtain financing in his own name to purchase a truck but was not approved by the lender. ECF No. 55-3, ¶ 14; ECF No. 57-2, ¶ 3. On February 3, 2022, Galaxy Cargo Inc. entered into a Purchase Agreement with Premier Truck Group of Chattanooga to purchase a used 2020 Freightliner PT126SLP for a total price of $138,250, which included a base price of $126,900, an $11,000 warranty, and a $350 documentary fee. ECF No. 55-3, ¶ 15; ECF No. 57-2, ¶ 3. The Purchase Agreement identifies "GALAXY CARGO INC." as the purchaser and was signed by Defendant in his capacity "as President" of Galaxy Cargo Inc. on February 3, 2022. ECF No. 55-3, ¶ 16; ECF No. 57-2, ¶ 3. The Purchase Agreement does not identify Defendant individually as a party or obligor. ECF No. 55-3, ¶ 17; ECF No. 57-2, ¶ 3.

On February 10, 2022, Galaxy Cargo Inc. obtained a loan from First-Citizens Bank & Trust Company in the principal amount of $77,250 to finance the truck purchase. ECF No. 55-3, ¶ 18;

ECF No. 57-2, ¶ 3. The loan was a three-year term loan with an interest rate of 3.950%, requiring monthly payments of $2,282.63, with a maturity date of February 18, 2025. ECF No. 55-3, ¶ 19; ECF No. 57-2, ¶ 3. The loan documents identify "GALAXY CARGO INC." as the borrower, not Defendant individually. ECF No. 55-3, ¶ 20; ECF No. 57-2, ¶ 3. Plaintiff contributed $40,000 toward the down payment for the truck by wire transfer on February 10, 2022. ECF No. 55-3, ¶ 22; ECF No. 57-2, ¶ 3. According to Plaintiff, the source of the $40,000 used for the down payment was a Workers Compensation case involving injuries from 2017. ECF No. 57-2, ¶ 3. On February 10, 2022, Plaintiff sent the $40,000 to Defendant, who used it toward the purchase of the truck from Premier Truck Group. ECF No. 55-3, ¶ 22-23; ECF No. 57-2, ¶ 3.

The parties never executed a written contract governing their arrangement. ECF No. 55-3, ¶ 24; ECF No. 57-2, ¶ 4. All discussions between Plaintiff and Defendant regarding the truck arrangement took place orally over the telephone or via text message. ECF No. 55-3, ¶ 25; ECF No. 57-2, ¶ 4. No other person was present for these oral discussions. ECF No. 55-3, ¶ 26; ECF No. 57-2, ¶ 4. Plaintiff's understanding was that he would operate the truck, all revenue would go to Galaxy Cargo Inc., and that Galaxy Cargo would deduct all operating expenses from the revenue before remitting any net profit to Plaintiff. ECF No. 55-3, ¶ 27; ECF No. 57-2, ¶ 4.

Plaintiff stated that the arrangement was supposed to last "as long as I was able to get this truck paid off" and that the "bank loan is something like three years." ECF No. 55-3, ¶ 32; ECF No. 57-2, ¶ 6. According to Plaintiff, Plaintiff and Defendant understood that "the truck would be paid off very quickly." ECF No. 57-2, ¶ 6. In his deposition, Plaintiff explained that "[his] plan was to pay it off in one year, but before one year," ECF No. 55-14 at 60, and that Galaxy Cargo did not require or ever mention that the three-year loan had to be paid within a year, *id.* at 62-63.

Plaintiff took possession of the truck in March 2022 and began operating it under Galaxy Cargo Inc.'s motor carrier authority. ECF No. 55-3, ¶ 33; ECF No. 57-2, ¶ 7. Between March 2022 and August/September 2022, Plaintiff transported a total of eight loads. ECF No. 55-3, ¶ 34; ECF No. 57-2, ¶ 7. The eight loads generated a total gross revenue of $34,180. ECF No. 55-3, ¶ 36; ECF No. 57-2, ¶ 7. All revenue from Plaintiff's loads was paid directly to Galaxy Cargo Inc., and not to Plaintiff or Defendant individually. ECF No. 55-3, ¶ 37; ECF No. 57-2, ¶ 7. During the period Plaintiff operated the truck, the truck was out of service approximately 50% of the time due to mechanical issues. ECF No. 55-3, ¶ 38; ECF No. 57-2, ¶ 7. The primary mechanical issues involved transmission problems (the truck would not shift properly and was limited to 35 miles per hour) and sensor failures. ECF No. 55-3, ¶ 40; ECF No. 57-2, ¶ 7.

In August 2022, after the truck broke down again, Plaintiff parked the truck at the Apple Green Travel Plaza on Interstate 90 near Rochester, New York. ECF No. 55-3, ¶ 50; ECF No. 57-2, ¶ 10. Plaintiff informed Defendant where the truck was located. ECF No. 55-3, ¶ 51; ECF No. 57-2, ¶ 10. The truck remained parked at the Apple Green Travel Plaza for approximately one month. ECF No. 55-3, ¶ 61; ECF No. 57-2, ¶ 10. In September or October 2022, Defendant recovered the truck from the Apple Green Travel Plaza. ECF No. 55-3, ¶ 63; ECF No. 57-2, ¶ 11. Defendant then had the truck repaired and put it back into service to cover the ongoing loan obligations. ECF No. 55-3, ¶ 64; ECF No. 57-2, ¶ 11.[1]

In his deposition, Plaintiff stated that he and Defendant never discussed losses. ECF No. 55-14 at 59. When directly asked, "if there was not enough income generated from the truck to pay these expenses, whose responsibility was it to pay for the deficit?" Plaintiff responded, "Of course, if he is holding the title under his company, he will be responsible. I know he is paying the

[1] As to the facts in this paragraph, Plaintiff does not affirmatively state that they are undisputed. Nevertheless, Plaintiff does not deny them and therefore, the Court considers them undisputed.

money responsibility . . . ." *Id.* at 57. When asked, "if there was a loss, if the revenue was not sufficient to pay for all of the fuel and insurance and tolls and trailer rental and the maintenance of the truck, if there was a deficit, whose responsibility was it to pay for the deficit?" Plaintiff then responded, "I don't know the answer for this one . . . [b]ut yes, whoever does have the paperwork name too will be responsible, my understanding." *Id.* at 57-58. Plaintiff, in his deposition, also explains that had he been in possession of the truck, he would have made between $5,000 a week with one driver to $10,000 a week if he had two drivers. *Id.* at 65.

On July 13, 2023, Plaintiff filed a complaint in this Court. ECF No. 1. Defendant then filed a motion to dismiss for failure to state a claim. ECF No. 13. This Court granted the motion in part, denied the motion in part, and granted leave to amend the complaint. ECF No. 17. On June 12, 2024, Plaintiff filed an amended complaint. ECF No. 18. Defendant then filed a second motion to dismiss, ECF No. 20, which the Court granted in part and denied in part on October 29, 2024, ECF No. 25. On December 20, 2024, the Court granted Plaintiff's motion to proceed *in forma pauperis* and granted his motion to appoint counsel. ECF No. 29. Plaintiff filed a Second Amended Complaint on June 21, 2025. ECF No. 48. Defendant subsequently filed a Motion for Summary Judgment, which is currently before this Court. ECF No. 55.

## DISCUSSION

Plaintiff brings claims for breach of contract, unjust enrichment, and moves for an accounting. ECF No. 48. Defendant moves for summary judgment on each claim. The Court discusses each claim below.[2]

[2] Defendant argues that the Court lacks subject-matter jurisdiction because the amount in controversy does not exceed $75,000, as required under 28 U.S.C. 1332(a). ECF No. 55-1 at 15. "A federal court generally has subject-matter jurisdiction over a civil case if it has either federal question jurisdiction or diversity jurisdiction." *Herrera v. Hillside Auto Mall Inc.*, No. 21-CV-04943, 2026 WL 639541, at *5 (E.D.N.Y. Mar. 8, 2026); *see* 28 U.S.C. §§ 1331, 1332(a). For diversity jurisdiction, there must be citizens of different states and the amount in controversy must exceed $75,000. 28 U.S.C. § 1332(a)(1). Here, there is no dispute that the parties are citizens of different states—New York and North Carolina. ECF No. 48, ¶ 1. Additionally, Plaintiff avers that the amount in controversy exceeds $75,000, *id.*, in that he

## I. Breach of Contract

Defendant moves for summary judgment on Plaintiff's breach of contract claim, arguing that Plaintiff's claim is barred by New York's Statute of Frauds, N.Y. Gen. Oblig. Law § 5-701(a)(1). ECF No. 55 at 18. To prevail on a breach of contract claim under New York law, a plaintiff must establish the existence of an enforceable contract. *Beautiful Jewellers Priv. Ltd. v. Tiffany & Co.,* 438 F. App'x 20, 21-22 (2d Cir. 2011) (summary order) (listing the elements of a breach of contract claim); *Hirtenstein v. V.A.L. Floors, Inc.*, No. 10-CIV-4269, 2013 WL 12616013, at *3 (S.D.N.Y. Mar. 1, 2013) (holding that Plaintiff must establish that there was an enforceable contract in a breach of contract claim). New York's Statute of Frauds, in relevant part, states:

> Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking: [] By its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime.

N.Y. Gen. Oblig. Law § 5–701(a)(1). Therefore, "[u]nder New York's Statute of Frauds, an agreement that by its terms cannot be performed within one year of its creation is void unless it is in writing." *In re Bayou Hedge Fund Litig.*, 534 F. Supp. 2d 405, 419 (S.D.N.Y. 2007), *aff'd sub nom. S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98 (2d Cir. 2009). Conversely, "[a]

---

furnished $40,000 to Defendant for Plaintiff's share in the downpayment of the truck, *id.* at ¶ 4, Plaintiff expected to make net profits ("[n]et profits were to be divided between the parties"), *id.* at ¶ 5, and Plaintiff "suffered damages in that he lost possession of the truck," *id.* at ¶ 14, which he describes as having been purchased for $138,250 with financing secured by Defendant's corporation, *id.* at ¶ 7. "To establish the amount in controversy, a defendant must show a reasonable probability that the claim is for more than the jurisdictional amount." *Herrera*, 2026 WL 639541, at *5 ("the party asserting jurisdiction bears the burden of showing the case is properly before the court"). "[I]f from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, . . . the suit will be dismissed.'" *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). Here, because it is not apparent to a legal certainty that Plaintiff cannot recover over $75,000, this Court concludes that it has subject matter jurisdiction over this matter.

contract that is capable of being performed within one year of its making is outside the statute." *Zaitsev v. Salomon Bros. Inc.*, 60 F.3d 1001, 1003 (2d Cir. 1995) (internal quotation marks omitted); *Alsayer v. OmniX Labs, Inc.*, No. 22-CV-2628, 2025 WL 100899, at *12 (S.D.N.Y. Jan. 15, 2025). Nevertheless, an exception exists "[u]nder New York law . . . [that] if performance within one year depends upon an act solely within the control of the party seeking to enforce the oral agreement, the Statute of Frauds remains applicable," and thus, such agreement must be in writing to be enforceable. *Zaitsev*, 60 F.3d at 1003; *In re Bayou Hedge Fund Litig.*, 534 F. Supp. 2d at 420.

In *Zaitsev*, Plaintiff appealed the district court's granting of Defendant's summary judgment motion. 60 F.3d at 1002. Plaintiff argued that his oral agreement was "capable" of being performed in one year and thus it should not be subject to the Statute of Frauds. *Id.* at 1003. However, the Second Circuit concluded that performance of the oral agreement within one year "plainly rested with [Plaintiff] alone," and therefore, the Statute of Frauds indeed applied. *Id.* As a result, the Second Circuit affirmed the district court's granting of Defendant's summary judgment motion, reasoning that the oral agreement was unenforceable because it had not been in writing. *Id.* at 1002-04.

Here, Plaintiff's position is that despite the oral agreement, which involved Plaintiff paying off a three-year bank loan, "[his] plan was to pay it off in one year, but before one year." ECF No. 55-14 at 60. However, when asked at his deposition, Plaintiff acknowledged that the bank loan was "something like three years," *id.*, and that Galaxy Cargo did not require nor ever mention that the three-year loan had to be paid within a year, *id.* at 62-63. Based on these facts, the power to engage in conduct that would result in paying off the three-year loan early—within one year—rested solely with Plaintiff, and thus, the Statute of Frauds applies. *See Zaitsev*, 60 F.3d 1001, 1003

(2d Cir. 1995) (holding that where performance within one year depends upon an act solely within the control of the party seeking to enforce the oral agreement, the Statute of Frauds remains applicable.); *see also In re Bayou Hedge Fund Litig.*, 534 F. Supp. 2d at 420 (holding that oral agreements are unenforceable where the right to cancel or terminate is limited unilaterally to the party seeking to enforce the oral agreement); *S. Cherry St., LLC*, 573 F.3d at 105 (oral agreement that "called for performance of an indefinite duration and could only be terminated within one year by its breach during that period" still "fell within the Statute of Frauds and was void") (citation modified). Since the Statute of Frauds applies in this case, without a written agreement, there was no enforceable contract, and therefore, no breach of contract.[3] As such, the Court grants Defendant's Motion for Summary Judgment as to Plaintiff's breach of contract claim.[4]

## II. Unjust Enrichment

Next, Defendant argues that Plaintiff's unjust enrichment claim fails because Plaintiff cannot establish that Defendant was enriched at Plaintiff's expense. ECF No. 55-1 at 17. Defendant reasons that Plaintiff cannot claim unjust enrichment after he "walk[ed] away from a losing venture he controlled."[5] *Id.* at 18. Defendant urges the Court to dismiss the unjust enrichment claim because Plaintiff conferred no net benefit to Defendant and equity does not favor recovery. *Id.*

[3] While it is undisputed that "all discussions between Plaintiff and Defendant regarding the truck arrangement took place orally over the telephone or via text message," ECF No. 55-3, ¶ 25; ECF No. 57-2, ¶ 4, neither party argues that the text messages constituted a written agreement. Moreover, "in New York, the well-established rule is that a memorandum sufficient to meet the requirements of the Statute of Frauds must contain expressly or by reasonable implication all the material terms of the agreement." *Roberto Coin, Inc. v. Goldstein*, No. 18-CV-4045, 2021 WL 4502470, at *15 (E.D.N.Y. Sept. 30, 2021) (citation modified). As there are no allegations here that the text messages contained all the material terms of the agreement, the Court shall not consider the text messages.

[4] Defendant argues that Defendant Fnu in his individual capacity is not a proper party to this action because Galaxy Cargo, Inc. was the contracting party, and thus, summary judgment must be granted in Defendant's favor. ECF No. 55-1 at 7. The Court need not address that issue at this time, as the Court finds that there was no enforceable contract.

[5] Defendant also argues that Plaintiff's operation of the truck resulted in a net financial loss to Defendant of $51,545.59. ECF No. 55-1 at 17. Defendant contends that Plaintiff received "substantial value" for Plaintiff's $40,000. *Id.* at 18. Specifically, Defendant claims that Plaintiff had exclusive use of a $138,250 truck for six months, during which Galaxy Cargo paid all operating expenses, including $11,006.71 in repairs, $10,953.60 in fuel, and $10,115 in

"To show unjust enrichment, [a plaintiff] must show that [he] conferred a benefit upon the defendant[] without adequate compensation." *Clarke v. Max Advisors, LLC*, 235 F. Supp. 2d 130, 148 (N.D.N.Y. 2002). "Unjust enrichment is defined under New York law to include retention of a benefit conferred by another, without compensation, under circumstances where compensation would reasonably be expected or, put another way, as a benefit received and not intended as a gift for which restitution or compensation should be made." *Id.* at 148-49. Under New York State law, an unjust enrichment claim requires a plaintiff to show that "(1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Delshah 60 Ninth, LLC v. Free People of PA LLC*, 175 F.4th 192, 200 (2d Cir. 2026) (internal quotation marks omitted).

Here, in his claim for unjust enrichment, Plaintiff alleges that Defendant was unjustly enriched when Defendant seized "the primary partnership asset, the truck," which Defendant then incorporated into Defendant's "fleet of trucks" with "exclusive possession of the truck" for "business use of the truck." ECF No. 48. Plaintiff, in his deposition, explains that had he been in possession of the truck, he would have made between $5,000 a week with one driver to $10,000 a week if he had two drivers. ECF No. 55-14 at 65. Because Plaintiff has provided evidence that Defendant was enriched by gaining exclusive access to the truck, and that in doing so, Plaintiff no longer had access to the truck, the Court concludes that the unjust enrichment claim may proceed because a reasonable fact finder could find that Defendant improperly benefitted when he seized the truck. *See, e.g., Manbro Energy Corp. v. Chatterjee Advisors, LLC*, No. 20-CIV-3773, 2022 WL 4225543, at *7 (S.D.N.Y. Sept. 13, 2022) (concluding that the unjust enrichment claim, *inter*

---

insurance. *Id.* However, the Court shall not consider this information in its analysis because the $40,000 downpayment was tied directly to the oral agreement, which this Court has found to be unenforceable.

*alia*, against one of the defendants would go to trial because "a reasonable [fact finder] could find that he benefitted improperly"); *In re 16th St. Regency LLC*, No. 14-46104, 2018 WL 4219179, at *10 (Bankr. E.D.N.Y. Sept. 4, 2018) (denying Defendant's motion for summary judgment and holding that "whether Defendant was unjustly enriched . . . turn[s] . . . on a host of issues, many of which constitute genuine issues of material fact for trial.") As such, Defendant's motion as to unjust enrichment is denied.

**III. Accounting**

Plaintiff brings a claim for a "judicial accounting of the partnership and an order allocating its assets." ECF No. 48 at 4. An action for an accounting is a two-step process. *Sriraman v. Patel*, 761 F. Supp. 2d 7, 17 (E.D.N.Y.), *amended*, 761 F. Supp. 2d 23 (E.D.N.Y. 2011). Initially, a plaintiff must establish that he and the defendant had a fiduciary relationship and that there was a breach of that duty. *MacCartney v. O'Dell*, No. 14-CV-3925, 2016 WL 815279, at *5 (S.D.N.Y. Feb. 29, 2016); *Soley v. Wasserman*, 639 F. App'x 670, 674 (2d Cir. 2016) (summary order) ("New York law clearly requires that a [party] . . . establish[] the existence of a fiduciary relationship." (internal quotations omitted)). While Defendant does not appear to directly respond to Plaintiff's claim for an accounting, Defendant does argue that Plaintiff and Defendant never entered a partnership. ECF No. 55-1 at 20. The Court agrees, and thus, concludes that Plaintiff fails to plead a fiduciary relationship that would permit an accounting.

Under New York Partnership Law, "[a] partnership is an association of two or more persons to carry on as co-owners a business for profit." N.Y. P'ship Law § 10 (McKinney). "The requirement that the parties have agreed to share in the profits and losses is an indispensable essential of a contract of partnership or joint venture." *Kidz Cloz, Inc. v. Officially For Kids, Inc.*, 320 F. Supp. 2d 164, 171 (S.D.N.Y. 2004) (internal quotations omitted). In Plaintiff's claim for an

accounting, he alleges that "the parties were partners in a business venture, with both contributing time and capital to that venture and agreeing to a sharing of profits and losses." ECF No. 48 at 4. However, in his deposition, Plaintiff concedes that he and Defendant never discussed losses. ECF No. 55-14 at 59. When directly asked, "if there was not enough income generated from the truck to pay these expenses, whose responsibility was it to pay for the deficit?" Plaintiff responded, "Of course, if [Defendant] is holding the title under [Defendant's] company, [Defendant] will be responsible. I know [Defendant] is paying the money responsibility . . . ." *Id.* at 57. When asked, "if there was a loss, if the revenue was not sufficient to pay for all of the fuel and insurance and tolls and trailer rental and the maintenance of the truck, if there was a deficit, whose responsibility was it to pay for the deficit?" Plaintiff then responded, "I don't know the answer for this one . . . But yes, whoever does have the paperwork name too will be responsible, my understanding." *Id.* at 57-58.

The evidence shows that Plaintiff never agreed to share losses, and thus, was not in a partnership with Defendant. *See* N.Y. P'ship Law § 10 (McKinney). As such, Plaintiff fails to establish the existence of a partnership/fiduciary relationship that is necessary for a Court to order an accounting, *see Soley,* 639 F. App'x at 674, and thus, the Court denies Plaintiff's claim for an accounting.

**IV. Counterclaims**

Neither Plaintiff nor Defendant have moved for summary judgment on the Defendant's counterclaims for breach of contract, unjust enrichment, or negligence. *See* ECF No. 49 at 10-12. Nevertheless, Defendant's breach of contract counterclaim is premised on the same contract that this Court finds to be unenforceable under New York State law. *Compare* ECF No. 48 at 1-3 *with* ECF No. 49 at 10-11. It would defy logic for this Court to conclude that an oral agreement was

unenforceable pursuant to the Statute of Frauds, but then allow a counterclaim premised on the same exact oral agreement to proceed. While "dismissing a case without an opportunity to be heard is, at minimum, bad practice . . . [,] in certain circumstances a *sua sponte* dismissal may be appropriate." *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 82 (2d Cir. 2018). In this case, as both parties have had the opportunity to be heard in their briefings regarding Plaintiff's claim for breach of contract, this Court concludes that *sua sponte* dismissal is appropriate at this time. Thus, the Court dismisses Defendant's counterclaim for breach of contract. As neither party has moved for summary judgment on Defendant's counterclaims for unjust enrichment or negligence, those claims remain.

## CONCLUSION

For the reasons discussed above, Defendant's Motion for Summary Judgment (ECF No. 55) is GRANTED IN PART and DENIED IN PART. Plaintiff's claim for breach of contract and Defendant's counterclaim for breach of contract are DISMISSED. The Court sets a status conference for September 22, 2026 at 2:30 pm to discuss the status of this action.

IT IS SO ORDERED.

Dated: August 18, 2026
Rochester, New York

HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York